(C. D. 853)

Thorens, Inc. v. United States

United States Customs Court, Second Division

(Decided May 17, 1944)

*Barnes, Richardson & Colburn* (*Eugene F. Blauvelt* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Richard H. Welsh*, special attorney),
for the defendant.

Before Tilson, Kincheloe, and Lawrence, Judges

Kincheloe, Judge: This is a suit against the United States brought
by plaintiff for the recovery of certain duty alleged to have been
improperly assessed by the collector of customs at the port of New
York on certain lithographically printed calendars of Swiss scenes,
which are represented by exhibit 1.

The said calendars were classified by the collector as lithographically
printed articles not over 12/1000 of an inch in thickness, and were
accordingly assessed for duty at the rate of 30 cents per pound under
paragraph 1406 of the Tariff Act of 1930. They are claimed to be
properly dutiable at 6 cents per pound under said paragraph 1406, as
modified by the trade agreement with the United Kingdom, T. D.
49753, as lithographically printed articles mounted on paper, card-
board, or other material, valued over 35 cents per pound and measur-
ing over 20/1000 of an inch in thickness.

The relevant part of paragraph 1406 with respect to mounting reads
as follows:

\* \* \* : *Provided,* That in the case of articles hereinbefore specified the thick-
ness which shall determine the rate of duty to be imposed shall be that of the
thinnest material found in the article, but for the purposes of this paragraph the
thickness of lithographs mounted or pasted upon paper, cardboard, or other
material shall be the combined thickness of the lithograph and the foundation on
which it is mounted or pasted, \* \* \*.

The provision of said trade agreement under which the plaintiff claims, reads as follows:

| Tariff Act of 1930; paragraph | Description of article | Rate of duty |
|---|---|---|
| 1406 | Pictures, calendars, cards, placards, and other articles, composed wholly or in chief value of paper lithographically printed in whole or in part from stone, gelatin, metal, or other material (except boxes, views of American scenery or objects, and music, and illustrations when forming part of a periodical or newspaper, or of bound or unbound books, accompanying the same), not specially provided for in paragraph 1406 or elsewhere in the Tariff Act of 1930, exceeding twenty one-thousandths of one inch in thickness, and valued at more than 35 cents per pound | 6¢ per lb. |

The contention of the plaintiff is that the calendars in question are "mounted" within the purview of said paragraph 1406 of the act of 1930, and that is the sole question herein for our determination.

The definition of "mount" is given in Webster's New International Dictionary, Second Edition, as follows:

*mount, v. t.* 5. *To put or fasten upon anything that sustains and fits for use.* as a gun on a carriage, a map or picture on paper, a postage stamp in an album, etc.; to prepare for use by placing in proper position or arrangement, as a diamond by setting, a sword blade by adding the hilt, etc. [Italics ours.]

In Funk & Wagnalls Standard Dictionary:

*mount, v. t.* 3. To prepare for use, exhibition, ornament, *preservation. or examination;* as, to mount a drawing or a map; to mount microscopic subjects or a stuffed animal. 5. To prepare for use by placing in position and assembling and adjusting parts; as, to mount a cannon. [Italics ours.]

The only witness testifying herein was James C. Quin, examiner of merchandise at the port of New York, who was called by the plaintiff. He testified that he measured the thickness of the lithographically printed pages of exhibit 1, and that the thickness of the thinnest material was the thickness he used for advisory classification purposes, and that that thickness was under 12/1000 of one inch. At the trial he measured the thickness of the whole calendar, including the lithographed face sheet, the 12 lithographed calendar sheets, and the cardboard back, which he stated was altogether 180/1000 of an inch in thickness. At this point it was agreed between counsel that exhibit 1 was valued at over 35 cents a pound. The witness testified further that in his opinion the backing and the lithographic pages were suspended from a common clip, and not mounted; that the fastening on exhibit 1, however, is a permanent fastening; that it is not a looseleaf affair; that the sheets cannot be removed except by destroying them; and that they cannot be replaced (R. 7–8).

An inspection of exhibit 1 shows that the clip referred to consists of a long celluloid-like material curled into circular form. It has a series of open spaces alternating with tonguelike forks, which latter run through corresponding slots or perforations at the top of the

sheets and cardboard backing composing the calendar in question. It is quite apparent that it is the circular form of the clip after the sheets are inserted that keeps them joined together and also attaches them securely to the cardboard in the back. While the witness Quin did testify that in his opinion the sheets are not mounted he admits that the sheets cannot be removed without destroying them, and that they cannot be replaced.

In the case of *Nippon Yusen Kaisha* v. *United States*, 12 Ct. Cust. Appls. 5, T. D. 39887, the appellate court had before it the same question in connection with certain calendars made up of lithographically printed pasteboard base or foundation to which was pasted and fastened with three wire staples a calendar pad consisting of 12 sheets of lithographically printed paper sewed together. In holding the articles to be "mounted" within the purview of paragraph 325 of the Tariff Act of 1913, the court stated in part as follows:

> The samples in evidence and the uncontradicted testimony in the case establishes that the calendars consist of a lithographically printed pasteboard base or foundation at least 10/1000 of an inch thick, to which is pasted and fastened with three wire staples a pad consisting of 12 sheets of paper sewed together. Each sheet of the pad is 3/1000 of an inch in thickness and has lithographically printed thereon the year, the appropriate month of the year, the days of the week, and the corresponding days of the month. The pad as found in the importation is an entirety and as an entirety it is not only pasted to the base or foundation but is mounted thereon by attaching it thereto with wire staples. Considering that the statute expressly provides that the thickness of lithographs mounted or pasted on paper, cardboard, or other material shall be the combined thickness of the lithograph and the foundation upon which it is mounted or pasted, and that the thickness of the lithographically printed foundation combined with that of the pad taken as an entirety exceeds 20/1000 of an inch, we see no escape from the conclusion that the importation was dutiable at 5 cents per pound under paragraph 325, as claimed by the importer. *Hensel et al.* v. *United States* (4 Ct. Cust. Appls. 94; T. D. 33370) cited by the Government is not in point inasmuch as the lithographic prints there involved were not pasted to the foundation or mounted thereon, but were hinged together by small strips of paper or cardboard.

> The finding of the board that the lithographically printed month sheets were not mounted or pasted to the foundation is not only wholly unsupported by the evidence, but is against the evidence furnished by the official samples and the testimony in the case.

The attorney for the defendant in support of his argument cites in his brief in the present case, the decision of *Hensel et al.* v. *United States* (4 Ct. Cust. Appls. 94, T. D. 33370), which was cited by the Government in the *Nippon* case, *supra*. We have carefully examined said decision, and we come to the same conclusion in this case in regard to the lithographic calendars which the appellate court did in the *Nippon* case, *supra*, namely, that it "is not in point inasmuch as the lithographic prints there involved were not pasted to the foundation or mounted thereon, but were hinged together by small strips of paper or cardboard."

The record in this case shows that the lithographic prints were not only mounted on the cardboard in the back, but were mounted so securely that the prints cannot be removed without destroying them, and cannot be replaced. Our careful visual examination of exhibit 1 also confirms this conclusion.

In our judgment these lithographic prints are *mounted* within the purview of the dictionary definitions of the word "mounted" and the *Nippon* case, *supra*, and we so hold. The claim of the plaintiff is therefore sustained. Judgment will be rendered accordingly.